IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CLUB FACTORAGE, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WOOD DUCK HIDING, LLC and ) <br> TIMOTHY M. PETRIKIN, ) <br> ) <br> Defendants. ) <br> ) | CASE NO. CV415-264 |

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 38.) For the following reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. This case will proceed to trial on the issue of whether Defendants breached a contract when they failed to pay annual club dues to Plaintiff.

### BACKGROUND

Hampton Island Club, LLC (the "Club") is a private club on Hampton Island Preserve in Liberty County, Georgia. (Doc. 37, Attach. 1 at 8.) On July 11, 2006, Defendant Timothy Petrikin entered into a Purchase and Sale Agreement with Hampton Island Preservation Properties, Inc. to purchase a lot on Hampton Island Preserve. (Doc. 40, Attach. 1 at 1.) Defendant Petrikin assigned the rights to purchase that property to Defendant Wood Duck Hiding, LLC

("Wood Duck"). (Id. at 2.) Defendant Wood Duck ultimately purchased the lot. (Id.) As part of the Purchase and Sale Agreement, Defendant Wood Duck agreed to buy a membership in the Club. In compliance with this term, Defendant Wood Duck purchased a membership in the Club by signing a Club Agreement on July 31, 2006. (Doc. 38, Attach. 1 at 66.) The Club Agreement required a membership deposit of $150,000 to be made in three installments of $50,000, along with yearly dues payments. (Id.) However, the Purchase and Sale Agreement stated that Defendant Wood Duck's obligation to pay dues to the Club was to be waived "for the longer of (a) twelve (12) months from the Closing Date or (b) the date on which 18 holes of [the Club's golf course named] Ricefields Golf Course[,] become open for play."[1] (Doc. 40, Attach. 1 at 3.)

Despite signing in his official capacity for Defendant Wood Duck, Defendant Petrikin was not absolved from all personal obligations under the Club Agreement. The Club Agreement listed Defendant Petrikin as the "designated user." (Id. at 4.) As the designated user, Defendant Petrikin agreed to become personally liable "for all dues,

---

[1] At the time Defendants purchased the lot and signed the Club Agreement, the golf course was under construction, but not yet complete.

2

fees, charges and other amounts from time to time owing to the club." (Id. at 3.)

On January 17, 2008, Defendant Petrikin received correspondence (Id. at 4) from Ronald S. Leventhal—the president of the Club and Plaintiff Club Factorage, LLC ("Club Factorage") (id. at 9)—indicating that the Club's golf course would be opening sometime in 2008. On February 16, 2008, Defendant Petrikin received a second letter from Mr. Leventhal stating that all membership accounts should be in good standing by February 29, 2008 and that club members could not withhold dues payments on the basis that the golf course had not opened. (Id. at 4-5.) At that time, Defendants had made two payments of $50,000 each towards the membership deposit. On January 17, 2009, Defendant Petrikin informed Mr. Leventhal by email that he would be withholding club dues on the basis that the golf course was not open. (Id. at 5.)

Plaintiff disagreed that Defendants were entitled to withhold dues pending completion of the Club's golf course. Instead, Mr. Leventhal informed Defendant Petrikin that the Club was

> not bound by unrecorded side deals and we are in our view not being treated fair; if you want to leave, then please do so as a gentleman. Otherwise all payments must be current prior to

3

> further use. Also we are otherwise not bound by any [other] deal.

(Id.) On March 3, 2008, Defendant Petrikin advised Mr. Leventhal that Defendant Wood Duck would not make the final installment on the membership deposit and would pay no further dues. (Id. at 6.) On the same day, Mr. Leventhal responded stating that "I cannot agree to accept any agreements to which we were not a party; it would open the Pandora's Box if I did." (Id. at 7.) On October 8, 2008, Defendants followed this email correspondence with a formal letter indicating that they would not make any further payments. (Id.)

After this letter was sent, there was no development in this case for six years. On June 6, 2014, the Club assigned its rights in this action to Plaintiff Club Factorage. (Doc. 37, Attach. 1 at 18.) On July 9, 2014, Defendant Wood Duck received a letter from Plaintiff demanding the payment of the final membership deposit of $50,000, dues from 2009 to 2014, and associated interest. (Doc. 40, Attach. 1 at 9.) When Defendants refused to tender these payments, Plaintiff filed a complaint in the Superior Court of Cobb County. (Doc. 37, Attach. 1 at 6.) The complaint alleged that Defendants had breached the Club

4

Agreement and that Defendants were liable in the amount of $135,300.00. (Id. at 11.)

On November 20, 2014, Defendants removed this case to the Northern District of Georgia. (Doc. 1.) On November 26, 2014, Defendants filed a motion to transfer the case to this district. (Doc. 2.) The Northern District granted that request on September 28, 2015. (Doc. 9.) On July 21, 2016, Defendants filed a motion for summary judgment. (Doc. 29.) However, this Court dismissed that motion and ordered Defendants to file an amended notice of removal because Defendants had failed to provide sufficient information to ascertain whether the Court had jurisdiction. (Doc. 35.) Defendants corrected that defect (Doc. 37)[2] and refiled their motion for summary judgment (Doc. 38). Defendants argue that Plaintiff's claim under the Club Agreement is foreclosed by the statute of limitations, that Plaintiff's claim is barred because Plaintiff repudiated the Club Agreement, and that Defendant Petrikin is not personally liable. (Id.)

---

[2] The Court understands from the filings (Doc. 36; Doc. 37) that Cumberland Creek Properties, Inc. is a Georgia corporation with its principal place of business in Georgia. If the parties contest this understanding, they are **DIRECTED** to inform the Court within ten days from the date of this order.

**ANALYSIS**

I.  <u>SUMMARY JUDGMENT STANDARD</u>

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (<u>quoting</u> Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. <u>DeLong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. STATUTE OF LIMITATIONS

As an initial matter, Defendants argue that Plaintiff's breach of contract claim is barred by the statute of limitations. In Georgia, "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." Ga. Code. Ann. § 9-3-24. According to Defendants, the Club Agreement—a simple contract in writing—was breached no later than October 8, 2008, when Defendants sent a letter stating affirmatively that they would not make any further installment or dues payments. (Doc. 38, Attach. 2 at 5.) Because Plaintiff filed his complaint on October 24, 2014, the statute of limitations has expired and Plaintiff has no remedy. (Id.)

In response, Plaintiff offers two arguments with respect to the statute of limitations. First, Plaintiff argues that the Club Agreement is divisible, meaning that the statute of limitations runs from the date that each payment would have been due. (Doc. 40 at 8.) Accordingly, the statute of limitations has not yet run with respect to the dues payments because they were payable less than six years from the date Plaintiff filed the complaint. (Id.)

Plaintiff's second argument addresses the outstanding $50,000 due for the membership deposit. Even if the Club

Agreement is divisible, that deposit was due more than six years before this suit. As a result, Plaintiff argues that the six year statute of limitations period does not apply to that payment. (Id. at 9.) Instead, Plaintiff contends that the contract that gave rise to the obligation to pay $50,000 was the Purchase and Sale Agreement between Defendant Wood Duck and Plaintiff's predecessor. (Id.) Plaintiff argues that this agreement is an instrument under seal which is subject to a 20 year statute of limitations pursuant to Ga. Code. Ann. § 9-3-23. (Id.)

If the Club Agreement is divisible, rather than entire, "the statute will run separately as to each payment or performance when it becomes due, either as an independent obligation or as a return for an instalment of the counter-performance." Piedmont Life Ins. Co. v. Bell, 103 Ga. App. 225, 235, 119 S.E.2d 63, 72 (1961) (citations omitted). Thus, even though the initial breach occurred when Defendants informed Plaintiff that they would no longer pay dues, the statute of limitations may not have run until those obligations became payable. "In Georgia, a contract is entire if 'the whole quantity, service, or thing, all as a whole, is of the essence of the contract, and if it appear[s] that the contract was to take the whole or none.' " Wood v. Unified Gov't of Athens-Clarke Cty.,

Ga., 818 F.3d 1244, 1247 (11th Cir. 2016) (quoting Piedmont, 103 Ga. App. at 235, 119 S.E.2d at 72). However, a divisible contract is one where "the quantity, service, or thing is to be accepted by successive performances." Piedmont, 103 Ga. App. at 235, 119 S.E.2d at 72 (citing Broxton v. Nelson, 103 Ga. 327, 30 S.E. 38 (1898); Dolan v. Lifsey, 19 Ga. App. 518, 519, 91 S.E. 913 (1917); Glass v. Grant, 46 Ga. App. 327, 167 S.E. 727 (1933)). The Georgia Supreme Court has held that a contract is divisible when it is "for an indefinite total amount which [is] payable in installments over [an] uncertain period." Baker v. Brannen/Goddard Co., 274 Ga. 745, 749, 559 S.E.2d 450, 453 (2002).

Applying those standards to this case, the Court concludes that the Club Agreement is divisible. The Club Agreement requires that "each owner of a home or homesite in the Communities . . . acquire and maintain a membership in the Club." (Doc. 34, Attach. 3 at 4.) Accordingly, members of the Club are required to maintain a membership in, and pay dues to, the Club for so long as they own their home—an uncertain period. Moreover, the dues, fees, and charges are set by the owner of the Club and may be modified at will—resulting in an indefinite amount. (Id. at 19.) Based on this analysis, the Club Agreement is a

divisible contract because it includes payments for an indefinite total amount that are payable in installments over an uncertain period. As a divisible contract, the statute of limitations on the dues did not begin to run until Defendants failed to pay on each successive date. As a result, claims for dues payments from 2009 to 2014 are not barred by the statute of limitations. Defendants' Motion for Summary Judgment is **DENIED** as to the dues payments.

However, Plaintiff's claim to the third $50,000 installment payment is barred. Plaintiff raised a single breach of contract claim in its complaint stating that "Defendants' failure and refusal to pay the balance of the membership deposit and annual dues constituted a breach of Defendants' Club Agreement with the Club." (Doc. 37, Attach. 1 at 10.) Plaintiff <u>did not</u> bring a breach of contract claim based on the Purchase and Sale Agreement. At least at this stage in the proceedings, Plaintiff is stuck with this decision.

The Court of Appeals for the Eleventh Circuit has made it clear that "[a] plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing <u>Shanahan v. City of Chi.</u>, 82 F.3d 776,

11

781 (7th Cir. 1996)). In this case, Plaintiff seeks to amend its complaint to bring a claim pursuant to the Purchase and Sale Agreement, and thereby save its claim to the third installment payment. This Plaintiff may not do. Because Plaintiff's claim based on the Club Agreement was filed more than six years after the due date for the payment of the final $50,000 installment of the membership deposit, the statute of limitations has run. Defendants' Motion for Summary Judgment as to the final $50,000 is **GRANTED**.

III. ANTICIPATORY REPUDIATION

Defendants also argue that Plaintiff cannot recover any payment because Plaintiff repudiated the contract. (Doc. 38, Attach. 2 at 5-6.) Specifically, Defendants point to Plaintiff's statement that it would not be bound by unrecorded side deals or any Shealy[3] agreement in determining whether Plaintiff owed dues. (Id. at 6.) In Georgia, anticipatory repudiation occurs "when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract." Textile Rubber & Chem. Co. v. Thermo-Flex Techs., Inc., 301 Ga. App. 491, 494, 687 S.E.2d

---

[3] E. Wade Shealy was the prior manager of the Club and the person who initially sold Defendant Petrikin his home.

12

929, 922 (2009) (quoting Coffee Butler Svc. v. Sacha, 258 Ga. 192, 193, 366 S.E.2d 672, 673 (1988)). When this happens the other party may elect to rescind the contract and recover in quasi contract, treat the repudiation as a breach, or wait until the time for performance of the contract and sue for breach. Piedmont, 103 Ga. App. at 234-35, 119 S.E.2d at 71 (citations ommitted).

In this case, Plaintiff and Defendant Petrikin exchanged a series of emails during a dispute as to dues payments. After Defendant Petrikin informed Mr. Leventhal that Defendants would make no further installment or dues payments, Mr. Leventhal informed Defendant Petrikin that the Club was

> not bound by unrecorded side deals and we are in our view not being treated fair; if you want to leave, then please do so as a gentleman. Otherwise all payments must be current prior to further use. Also, we are otherwise not bound by any Shealy deal.

(Doc. 38, Attach. 1 at 34.) Defendant Petrikin replied to this email by stating

> I am sorry that the current management of the Hampton Island Club will not honor the agreement reached by Wood Duck Hiding and Wade Shealy's entity in July 2006. Since it is your position that no one is bound by those agreements, I do not think it is my best interest to make the final installment payment to purchase a trustee membership in the Club.

(Id.) Mr. Leventhal ended the exchange by informing Defendant Petrikin that

> I cannot agree to accept any agreements to t [sic] which we were not a party, it would open the Pandora's Box if I did. I can with a guaranty from you of payment, delay until the first round is played by Steve in the next couple of months.

(Id. at 32.)

Defendants argue that this exchange is clear evidence of Plaintiff repudiating the contract which, in turn, allowed Defendants to breach by not paying the final installment or any future dues payments. Which contract Plaintiff repudiated—the Purchase and Sale Agreement or the Club Agreement—is less clear. From this exchange, the Court is unable to determine which contract Plaintiff allegedly repudiated and whether Plaintiff was successful in repudiating that contract. At first glance, it appears that Plaintiff is refusing to be bound by the Purchase and Sale Agreement. However, Plaintiff also appears willing to alter the terms of the Club Agreement by delaying the payment of dues with an appropriate guarantee. Defendants' motion for summary judgment is of little help in disentangling this conundrum as it alternatively suggests that Plaintiff repudiated the Purchase and Sale Agreement but also alleges that Plaintiff repudiated other "agreements." (Doc. 38, Attach. 2 at 6.) Because the Court itself is unclear which

14

contract has been repudiated, it would be improvident to grant summary judgment to Defendants at this stage as a question of fact remains as to which contract was allegedly repudiated. Accordingly, Defendants are not entitled to summary judgment.

IV. DEFENDANT PETRIKIN'S INDIVIDUAL OBLIGATION

Defendants allege that Plaintiff's breach of contract claim against Defendant Petrikin fails because there was never a contract between Defendant Petrikin and Plaintiff. (Id.) Plaintiff disagrees. Plaintiff points to the terms of the Club Agreement, which state that Defendant Wood Duck "shall be jointly and severally liable with each Designated User for all dues, fees, charges and other amounts from time to time owing to the Club." (Doc. 38, Attach. 1 at 66.) Defendant Petrikin was the designated user on that Club Agreement. (Id. at 65.) In Georgia, as elsewhere, courts "interpret a contract in accordance with its plain language." SCSJ Enters., Inc. v. Hansen & Hansen Enters., Inc., 319 Ga. App. 210, 212, 734 S.E.2d 214, 218 (2012) (citing S. Point Retail Partners v. N. Am. Props. Atlanta, 304 Ga. App. 419, 422, 696 S.E.2d 136 (2010)). Here the plain language of the contract states that Defendant Petrikin is personally liable as a designated user. Accordingly, Defendants' Motion for Summary Judgment on the

15

basis that Defendant Petrikin is not individually liable is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 38) is **GRANTED IN PART** and **DENIED IN PART**. This case will proceed to trial on the issue of whether Defendants breached a contract when they failed to pay annual dues to Plaintiff.

SO ORDERED this 26th day of June 2017.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA